UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br>v.<br>IVAN G. PIVAROFF,<br><br>             Defendant. | Case No. 2:13-cv-01498-APG-PAL<br><br>**ORDER<br>- AND -<br>REPORT AND RECOMMENDATION<br>FOR CONTEMPT PROCEEDINGS** |
|---|---|

This matter is before the Court on Defendant Blenheim Trust Company, Ltd.'s failure to comply with this Court's orders. This proceeding is authorized by 28 U.S.C. § 636(e)(6)(B). Upon review of the documents submitted in response to this Court's Order to Show Cause (Dkt. #96) ("OSC"), the arguments of counsel, and good cause appearing therefore, the Court certifies the following facts constituting civil contempt:

**I.    CERTIFIED FACTS**

   **A.    Relevant Background**

The United States initiated this civil action on August 8, 2013, and seeks to enforce federal tax liens and a related judgment of over $6 million entered against Ivan G. and Gwendolyn S. Pivaroff (the "Pivaroffs") in 2009. *See* Compl. (Dkt. #1); Am. Compl. (Dkt. #16); 2nd Am. Compl. (Dkt. #120). The United States' initial Complaint (Dkt. #1) named the Pivaroffs as Defendants along with two entities they purportedly control, Oahu Limited Partnership and Associated Enterprises Limited.

The United States has twice amended its complaint. On December 20, 2013, the United States filed an Amended Complaint (Dkt. #16) adding the following parties: Molokai Limited Partnership, Anderson Attic, Inc., United Realty, Inc., Blenheim Trust Company, Ltd. ("Blenheim") as Trustee of Kihei International Trust, and Ally Financial, Inc. On June 29, 2015,

the United States filed its Second Amended Complaint (Dkt. #120) adding the following parties: Blenheim as Trustee of VIP International Trust, Lakeland, Inc., Clark County Treasurer, Regency Towers Association, Inc., and Las Vegas Country Club Master Association.

Blenheim is Trustee of both the Kihei International Trust and VIP International Trust, which are offshore trusts that the Pivaroffs created under the laws of the States of Jersey. 2nd Am. Compl. (Dkt. #120) ¶¶ 8–9. Blenheim is located in Guernsey, Channel Islands. *Id.* Blenheim asserts that it "is an independent financial services group" and its "core business includes formation, trusteeship, and administration of trusts and other fiduciary services. As such, [Blenheim] is a licensed fiduciary under Guernsey's Regulation of Fiduciaries, Administration Businesses and Company Directors Law and is licensed by the Guernsey Financial Services Commission." *See* Blenheim's OSC Response (Dkt. #103) at 1 (citing Decl. of John Robilliard (Dkt. #103-1) ¶ 4).

With regard to Blenheim, the United States alleges that the Pivaroffs have executed sham promissory notes and a mortgage deed for over $1 million encumbering their Las Vegas, Nevada residence. 2nd Am. Compl. ¶¶ 134–152. The Pivaroffs purportedly accomplished this through a shell company, Associated Enterprises Limited ("AEL"), which exists to create loans for clients involved in sophisticated schemes to evade federal income and employment taxes. *Id.* ¶¶ 153–158. The United States asserts that the mortgage deed is not a valid lien but a sham instrument that the Pivaroffs executed to protect their property from federal tax liens and to defraud the United States. *Id.* ¶ 159. Further, the promissory notes and mortgage deed were sham transactions intended to help the Pivaroffs repatriate $1 million back into the United States for their own personal use. *Id.* ¶ 160.

On July 23, 2014, the Court entered a Scheduling Order (Dkt. #57) commencing discovery. Thereafter, the Court has extended the discovery deadlines upon the Government's motions. *See* Dec. 10, 2014 Order (Dkt. #77); Mar. 13, 2015 Order (Dkt. #90); July 21, 2015 Am. Mins. of Proceedings (Dkt. #127).

///

///

### B. The Disputed Documents and Withdrawal of Multiple Counsel

The Pivaroffs and Oahu Limited Partnership were initially represented in this matter by Mark B. Bailus of Bailus Cook & Kelesis, Ltd. *See* Waiver of Service Returned Executed (Dkt. ##7–9). On October 29, 2013, the parties filed a Stipulation (Dkt. #11) requesting leave for AEL to also be represented by the Pivaroffs' law firm, Bailus Cook & Kelesis, Ltd.

On July 24, 2014, Mark B. Bailus and George P. Kelesis filed a Motion to Withdraw (Dkt. #58) as attorneys of record for the Pivaroffs, AEL, and Oahu Limited Partnership. The Court granted this motion and gave the corporate parties until August 28, 2014, to retain new counsel. *See* July 30, 2014 Order (Dkt. #60). The Pivaroffs were given the option of retaining substitute counsel or filing a notice electing to appear *pro se*. *Id*. The Pivaroffs notified the Court that they intended to appear *pro se* moving forward. *See* Am. Statement (Dkt. #61); Notice (Dkt. #62).[1]

On August 11, 2014, Jeffrey R. Sylvester of Sylvester & Polednak, Ltd. filed a Notice of Appearance (Dkt. #63) for AEL. Almost two months later, Blenheim answered the Amended Complaint by and through its counsel, Allyson R. Noto of Sylvester & Polednak, Ltd.—the same law firm representing AEL. *See* Answer (Dkt. #69), filed Oct. 3, 2014.

On February 12, 2015, the undersigned conducted a telephone conference to facilitate informal dispute resolution with counsel for the United States, Philip Doyle, and counsel for Blenheim, Allyson Noto. *See* Mins. of Proceedings (Dkt. #81). The dispute involved document requests that the United States served on Blenheim. *Id*. Ms. Noto believed that the requested documents are confidential banking records of other entities who have not yet appeared in this action. *Id*. Ms. Noto conceded that Blenheim had the documents and they were relevant and discoverable in this case; however, Blenheim did not want to produce the documents without a protective order precluding the United States from using them for any purpose unrelated to this case. *Id*. Mr. Doyle agreed that personal identifiers and sensitive information should be

---

[1] On January 31, 2014, the Pivaroffs filed a Notice of Bankruptcy (Dkt. #42) announcing that they had filed a bankruptcy petition. The bankruptcy court granted the Pivaroffs a discharge on August 5, 2014. *See* Notice of Discharge (Dkt. #64).

3

1 protected from public disclosure; however, he disagreed that the documents should be subject to
2 a broader protective order prohibiting their use in litigation to establish tax liability. *Id*. The
3 parties discussed a protective order but were unable to agree on the scope of a protective order
4 governing confidential treatment of the documents. *Id*. *See also* Noto Mot. to Withdraw (Dkt.
5 #92), Aff. of Allyson R. Noto ¶¶ 7–12.

6 After hearing arguments from counsel, the Court compelled Blenheim to produce the
7 responsive documents to the United States. Mins. of Proceedings (Dkt. #81). The Court also
8 imposed a temporary protective order precluding the United States from using the documents for
9 any purpose unrelated to this case to allow the Court to consider the parties' disputes about the
10 scope of a protective order governing confidentiality of the documents. *Id*. The Court instructed
11 the parties to submit a joint status report articulating their respective positions about the scope of
12 a protective order governing confidential treatment of the documents and set the matter for
13 hearing on March 3, 2015. *Id*. *See also* Joint Status Report (Dkt. #85).

14 On February 20, 2015, the undersigned conducted a second telephone conference with
15 counsel for the United States, Herbert Linder, and counsel for Blenheim, Allyson Noto. *See*
16 Mins. of Proceedings (Dkt. #82). Blenheim produced 4,141 responsive documents to the United
17 States, but a small number of documents were redacted. *Id*. *See also* Noto Mot. to Withdraw
18 (Dkt. #92), Noto Aff. ¶¶ 13–18. Ms. Noto represented that her client redacted the information
19 from the documents but provided her with unredacted copies. *Id*. Ms. Noto further asserted that
20 the redacted information was not relevant or privileged, and confirmed that the redactions
21 involved non-party entities who filed for bankruptcy protection. *Id*.

22 The United States asked the Court to compel Blenheim to produce unredacted copies of
23 the documents arguing that the non-parties at issue are other entities in which the non-stayed
24 Defendants have an interest. Mins. of Proceedings (Dkt. #82). Ms. Noto did not dispute that
25 these non-parties were entities in which Blenheim had an interest. *Id*. After hearing the
26 arguments of counsel, the Court compelled Ms. Noto to produce unredacted copies of
27 Blenheim's documents to the United States. *Id*. The Court found that "the documents were in
28 the care, custody and control of the Defendants who are not covered by the automatic stay

provisions of the Bankruptcy Code." *Id*. "The discovery requests were not directed to stayed entities, and the fact that the documents contain factual information about stayed entities is not grounds to prevent discovery of information relevant and discoverable within the meaning of Fed. R. Civ P. 26(b)(1)." *Id*.

Blenheim did not appeal or object to the order compelling production pursuant to Rule 72(a) of the Federal Rules of Civil Procedure or LR IB 3-1 of the Local Rules of Practice.

After the second teleconference, counsel for the United States requested 39 pages of redacted documents by specific bates number. *See* Noto Mot. to Withdraw (Dkt. #92), Mot. Exs. 6 & 7, Noto Aff. ¶¶ 17–18. Ms. Noto represented that she was only aware of 31 redacted documents at the time of the second phone conference. *Id.* Thus, she requested the remaining eight documents from her client.[2] *Id*. According to Ms. Noto, she participated in a phone conference with her client and their Guernsey counsel on or about February 24, 2015, in which they discussed the additional eight documents. Noto Aff. ¶ 19. Her client would not provide her with an unredacted copy of two of the eight documents, BTC02008 and BTC2009 (the "Portfolio Summary Documents"), because they contained the names of other clients for which Blenheim served as Trustee:

> It was explained to me that Blenheim is subject to a data protection law in Guernsey that would prohibit such disclosure as well as a general duty of confidence as a Trustee that would result in potential liability to Blenhiem by the clients identified in the document for breach of that duty.

*Id*. Ms. Noto was informed that her client would provide an affidavit "under penalty of perjury that the names that were redacted were unrelated to the Piveroffs or any of their investment accounts." *Id*. ¶ 20. Based upon these representations, Ms. Noto was satisfied that she could represent in good faith that she "had made every effort to comply with the discovery request but that the document was irrelevant and required protection." *Id*. Thus, Ms. Noto produced six of the eight remaining documents to the United States in unredacted form. *Id.*, *see also* Noto Mot.

---

[2] Ms. Noto's Affidavit does not provide the name of any individual who was authorized to act on behalf of Blenheim Trust, but simply refers to a "client."

5

Ex. 8. She also informed the United States as follows regarding the two Portfolio Summary Documents:

> the documents are an attachment to a general investment overview from London & Capital to Blenheim Trust Company which includes a list of clients who have financial investments with London & Capital for which Blenheim serves as Trustee. It includes names of clients unrelated in any manner to the Piveroffs or any accounts serviced by the Kihei Trust or any other entity otherwise named in any of the filings or related in any way to the Piveroffs, their investments or accounts. As an officer of the Court, I am advising you in good faith that the only redacted portions in 2008 and 2009 include clients for which Blenheim acts as Trustee unrelated in any manner to the Piveroffs or any of their investments or accounts.

*Id*. *See also* Noto Mot. Ex. 8.

The parties subsequently filed a Joint Status Report (Dkt. #85) setting forth the parties' respective arguments regarding Blenheim's request for a protective order. In support of its position, Blenheim submitted an unpublished case from the Guernsey Appellate Court, *see In Re B*, Judgment 35/2012 (Ct. App. Guernsey July 31, 2012), Joint Status Report Ex. 1 (Dkt. #85-1). Blenheim argued that *In Re B* exemplified Guernsey's strict data privacy laws and demonstrated why the company could be subject to liability for a breach of its fiduciary duty of confidence if the Court were to force Blenheim to produce the unredacted Portfolio Summary Documents to the United States. *See* Joint Status Report at 9–12. However, in reviewing *In Re B*, the unpublished decision demonstrates that a trustee does not breach its duty of confidence "where disclosure is under compulsion by law." *Id*., *In Re B* at 12, ¶ 39 (citation omitted). The *In Re B* court specifically concluded that a trustee could answer questions if compelled by a foreign court:

> The facts of this case serve to remind trustees and beneficiaries that there are limits to the obligation on trustees to keep the affairs of the trust confidential. One of those limits is the ability of the trustee to protect its own interests in circumstances where silence in response to a court order, or summons (*whether issued in this jurisdiction or abroad*), would be likely to expose the trustee to a real risk of serious harm. *A trustee in such circumstances cannot be expected to refuse to answer questions in a court of law*, and simply suffer the consequences.

*Id.* at 23, ¶ 71 (emphasis added).

The undersigned held a hearing on March 3, 2015, to address the unresolved issue of Blenheim's request for a protective order and the parties' dispute over production of the Portfolio Summary Documents. *See* Mins. of Proceedings (Dkt. #89). Ms. Noto made representations concerning the Portfolio Summary Documents, which she described as a portfolio summary of all investments in a certain account for the quarter ending July 2004. *Id.* Ms. Noto argued that direct disclosure of the Portfolio Summary Documents might subject Blenheim to civil liability under the laws of Guernsey. However, the Court noted that, under the only Guernsey law Blenheim cited as authority for this proposition, disclosure under the compulsion of a court order would shield Blenheim from civil liability. Counsel for the United States argued the extent of the Pivaroffs' efforts to hide assets using Blenheim and other offshore entities and articulated why, based upon the documents Blenheim produced, the government believed that the Portfolio Summary Documents were relevant and discoverable.

After hearing the arguments of counsel, the Court denied Blenheim's proposed form of protective order, *see* Joint Status Report Ex. 2 (Dkt. #85-2), and dissolved the temporary protective order entered during the second teleconference. *Id.* The Court ruled that Blenheim would be allowed to mark or redact the responsive documents intended for public disclosure of personal identifiers and account information pursuant to the Local Rules and Federal Rules of Civil Procedure. *Id.* However, the Court declined to enter a broader form of protective order, finding that Blenheim has not met its burden under Rule 26(c) of establishing particularized harm or prejudice would result if a protective order was not entered. *See, e.g.*, *Folz v. State Farm*, 331 F.3d 1122, 1130–31 (9th Cir. 2003). Additionally, the Court directed Ms. Noto and Blenheim to submit the Portfolio Summary Documents in camera for the Court's review. *See* Mins. of Proceedings (Dkt. #89).

Blenheim did not appeal or object to the Court's order to provide the Portfolio Summary Documents in camera pursuant to Rule 72(a) of the Federal Rules of Civil Procedure or LR IB 3-1 of the Local Rules of Practice.

Three weeks after the hearing, Blenheim had still not submitted the Portfolio Summary Documents for in camera review. Therefore, on March 26, 2015, the Court issued an Order

(Dkt. #91) providing a deadline of April 3, 2015, for Ms. Noto and Blenheim to comply.  On April 3rd, Ms. Noto filed a Motion to Withdraw (Dkt. #92) as counsel for Blenheim.  According to Ms. Noto, she advised her client of the outcome of the March 3rd hearing and the Court's explicit instruction to produce the Portfolio Summary Documents in camera.  *Id*., Noto Aff. ¶¶ 23–25.  Nevertheless, she could not obtain a copy of the unredacted documents nor authority from her client to produce the unredacted documents pursuant to the Court's order.  *Id*. ¶ 25.  Ms. Noto sought to withdraw as counsel for Blenheim based upon her client's unequivocal refusal to provide the Portfolio Summary Documents in camera.  *Id*. ¶¶ 27–29.  The United States opposed Ms. Noto's Motion on numerous grounds, including the fact that her law firm, Sylvester & Polednak, Ltd., would remain as counsel for AEL.  *See* USA's Response to Noto's Mot. (Dkt. #94).  The United States characterized Ms. Noto's withdrawal request as an improper attempt to avoid discovery and gain strategic advantage.  *Id*. at 2.  The United States claimed this was "a strategic ploy by one client to resist this court's order while allowing another client which is controlled by the same individuals to continue to be represented by the same law firm."  Apr. 16, 2015 Order (Dkt. #97).

The undersigned held a hearing on April 10, 2015, to address Ms. Noto's Motion.  *See* Mins. of Proceedings (Dkt. #96).  During oral argument, the United States' counsel argued that Blenheim "probably figured out that the worst thing that will happen for failing to comply with the court's order is that it may be defaulted.  If this occurs the government will not have the additional discovery it seeks."  Order (Dkt. #97) at 2.  The Court accepted Ms. Noto's representations that she urged her client to comply with the Court's order, and that she advised the client that it had the right to appeal any order requiring production of the Portfolio Summary Documents.  The Court also accepted Ms. Noto's representation that she moved to withdraw simply because the client would not follow her advice to comply.  *Id*.  The Court therefore granted her Motion and ordered Blenheim to designate substitute counsel within 30 days.  Mins. of Proceedings (Dkt. #96); *see also* Order (Dkt. #97).  In addition, the Court ordered Blenheim to show cause why contempt and/or other sanctions should not be imposed for its willful failure to produce the Portfolio Summary Documents to the Court in camera as previously ordered after

8

being advised by counsel.  Mins. of Proceedings (Dkt. #96).  Blenheim was warned that sanctions up to and including case dispositive sanctions may be imposed. *Id*.

On May 15, 2015, a Notice of Appearance (Dkt. #100) and OSC Response (Dkt. #103) was filed on behalf of Blenheim by Jeffrey D. Lewin, Donald G. Rez, and Elizabeth Stephens of Sullivan Hill Lewin Rez & Engel, APLC.  In short, Blenheim's OSC Response attempted to re-litigate the underlying merits of the Court's order directing Ms. Noto and Blenheim to submit the Portfolio Summary Documents in camera.  Substitute counsel again argued that Guernsey law prohibits disclosure of confidential information of the company's clients who are not Defendants in this case, "even for in camera review by the Magistrate Judge."  OSC Response (Dkt. #103) at 3:10–16.  As such, Blenheim asserted it had shown adequate cause why contempt sanctions should not be imposed.

Attached to Blenheim's OSC Response is the Declaration of John Robilliard (Dkt. #103-1), which reiterates the brief's core arguments.  Mr. Robilliard states that he is one of Blenheim's "current Board of four Directors," and he manages Blenheim's relationships with property managers, investment managers, beneficiaries, settlors, protectors, and their advisers on a day-to-day basis.  *Id*. ¶ 3.  Mr. Robilliard also acknowledges that he is the Blenheim Director responsible for this lawsuit.  *Id*. ¶ 7.  According to Mr. Robilliard, Blenheim's unidentified Guernsey counsel warned him that

> providing such confidential information in camera pursuant to a Court Order would not only be actionable by the trustors and beneficiaries as a breach of trust and could subject [Blenheim] not only to substantial claims for damages, but also could subject [Blenheim] to loss of its license, in essence corporate capital punishment, to the detriment of BTC clients and employees as well as [Blenheim].

*Id*. ¶ 8.  Upon the advice of Guernsey counsel, who was not named, Mr. Robilliard declares that he caused the redactions on the Portfolio Summary Documents.  *Id*. ¶ 9.  Although it is not expressly stated, Mr. Robilliard's Declaration suggests that he personally authorized Blenheim's disobedience of the Court's order to submit the Portfolio Summary Documents in camera.

The United States' Response (Dkt. #109) argued that this matter should be certified to the district judge for contempt proceedings.  Certification is appropriate because Blenheim

"knowingly refused to comply with the Court's specific discovery orders." *Id*. at 7:10–11. The Response asserts that it is too late for Blenheim to argue that the Court should not have entered the discovery orders. Citing *Richmark Corp. v. Falling Timbers Consultants*, 959 F.2d 1468 (9th Cir. 1992), the United States pointed out that Blenheim has taken *no steps* to comply with the Court's order, much less "all reasonable steps" within its power. *Id*. at 1479 (affirming the district court's contempt sanctions where an entity made no good faith efforts to clarify the foreign secrecy law or to seek a waiver of the secrecy statutes before refusing to comply with a discovery order).

However, even if the Court were to revisit the merits of the order compelling Blenheim to produce the Portfolio Summary Documents in camera, the United States maintains that the order was proper and, as a result, contempt sanctions are warranted. In *Richmark*, the Ninth Circuit recognized several factors a district court should consider when deciding whether to order disclosure when a foreign entity opposes discovery on the basis of secrecy laws within its home country. *Id*. at 1475–78. After methodically analyzing those factors, the United States concluded that *Richmark* factors support disclosure of the Portfolio Summary Documents as well as contempt sanctions. USA's Response (Dkt. #109) at 13. The United States took no position regarding the appropriate contempt sanction; however, it was noted that a monetary sanction may be more effective than the threat of a default judgment. *Id*. at 15.

On July 21, 2015, the Court held a hearing on several outstanding matters in this case, including Blenheim's OSC Response. The Court heard the arguments of substitute counsel for Blenheim who continued to argue that the Court's earlier ruling compelling in camera submission was erroneous. Counsel conceded the order was not objected to or appealed to the district judge as required by Rule 72(a) of the Federal Rules of Civil Procedure or LR IB 3-1 of the Local Rules of Practice. Counsel initially claims that Blenheim was not represented at the time an appeal or objection would have been due. However, Ms. Noto remained counsel of record until April 10, 2015, more than a month after the Court ordered Blenheim to produce the documents for in camera review. After hearing the arguments of counsel, the Court indicated contempt sanctions would be certified to the district judge with a factual finding that Blenheim

has not shown cause why contempt sanctions should not be imposed. *See* Am. Mins. of Proceedings (Dkt. #127).

Notably, on August 5, 2015, Blenheim's new counsel, Jeffrey D. Lewin, Donald G. Rez, and Elizabeth Stephens of Sullivan Hill Lewin Rez & Engel, APLC, filed an Emergency Motion to Withdraw (Dkt. #137). *See also* Corrected Emerg. Mot. to Withdraw (Dkt. #138). The Motion claims that Blenheim instructed the law firm to "immediately cease providing all services for it and terminate its relationship with Blenheim in any capacity." *Id*., Aff. of Jeffrey D. Lewin ¶ 2. However, the Motion did not provide the name of the individual who instructed counsel to cease providing legal services authorized to bind the corporation. Instead, a corporate address was provided for the client in London, England. Accordingly, the Court denied the Motion without prejudice. *See* Order (Dkt. #144).

**II.    DISCUSSION**

**A.    Civil Contempt Proceedings**

In any case proceeding under 28 U.S.C. §§ 636(a) or (b), a magistrate judge may certify the facts to a district judge for criminal or civil contempt. *See* 28 U.S.C. § 636(e)(6)(B); *Bingman v. Ward*, 100 F.3d 653, 656–657 (9th Cir. 1996). Pursuant § 636(e)(6)(B), the undersigned has the authority to certify the facts of the contempt to the district court and to issue an order directing a defendant to show cause before the district judge why it should not be held in contempt. *See Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 580 F. Supp. 2d 969 (C.D. Cal. 2008). In light of the foregoing history of Blenheim's failure to obey court orders, the Court certifies the preceding facts and recommends that Blenheim be held in contempt of court.

A party may be found in contempt for failure to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A)(vii). Rule 37 authorizes contempt proceedings for any party *and a party's officer, director or managing agent* that fails to obey an order to provide or permit discovery, including an order compelling discovery. Fed. R. Civ. P. 37(b)(2)(A) (emphasis added). A finding of civil contempt is appropriate where a party disobeys a specific and definite court order "by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (citation omitted). Once a violation of a specific

and definite court order is shown, the burden shifts to disobedient party to prove that it took all reasonable steps within its power to ensure compliance. *Hook v. Ariz. Dep't of Corrections*, 107 F.3d 1397, 1403 (9th Cir. 1997). Where a party takes all reasonable steps to comply with an order, technical or inadvertent violations will not support a finding of civil contempt. *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986); *see also Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989) (substantial compliance is a defense to an action for civil contempt).

Obedience of a court order is required unless and until it has been vacated or reversed, even an assertedly void order, except in only the rarest of situations. *Zapon v. United States Dept. of Justice*, 53 F.3d 283, 285 (9th Cir. 1995) (citing *Walker v. City of Birmingham*, 388 U.S. 307, 315 (1967)). A court may adjudge a party in contempt regardless of the party's intent in disobeying the order. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987). Judicial sanctions for civil contempt contemplate two purposes: (1) to coerce the contumacious party into compliance, or (2) to compensate the complaining party for its losses. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992); *see also United States v. United Mine Workers of America*, 330 U.S. 258, 303–04 (1947). A civil contemnor carries the keys of his prison in his own pocket because civil contempt is intended to be a remedial measure to coerce compliance of what the contemnor has refused to do. *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)).

As demonstrated by the facts certified above, Blenheim should be held in civil contempt under Rule 37(b)(2)(A)(vii) and 28 U.S.C. § 636(e)(6)(B) because it has repeatedly failed to obey the Court's orders to produce the Portfolio Summary Documents in camera. This constitutes contumacious conduct. *See* Fed. R. Civ. P. 45(e); *see also Forsythe v. Brown*, 281 F.R.D. 577, 587 (D. Nev. 2012) (citing *Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (recommending that a nonparty be held in contempt for failing to comply with a subpoena). The Court's March 3rd and March 26th orders were clear and unambiguous. Blenheim has never claimed otherwise. Between March 3rd and March 26th, Blenheim was

represented by counsel who advised the client that order could be appealed, and urged the client to comply. Clear and convincing evidence establishes that Blenheim's representative, John Robilliard, willfully failed to comply with the orders. Blenheim did not object to the orders or appeal them to the district court. Instead, Mr. Robilliard authorized redactions and instructed Ms. Noto not to comply with the orders.

Although Blenheim has repeatedly argued that Guernsey law prohibits disclosure of the Portfolio Summary Documents, *even in camera*, the single, unpublished case Blenheim submitted in support of its arguments plainly demonstrates that this argument fails. Even viewed in the light most favorable to Blenheim, this untenable legal position cannot shield Blenheim from sanctions. As a result, there are no facts indicating that Blenheim took all reasonable steps to comply with the Court's order or was somehow unable to comply. If, as counsel for Blenheim argued, the undersigned's orders compelling in camera review of the Portfolio Summary Documents were erroneous, Blenheim's remedy was to file objections appealing those orders pursuant to Rule 72(a) and LR IB 3-1. It did not do so and simply failed to comply. To allow Blenheim's willful failure to comply would encourage disrespect of the court and undermine the integrity of the court's orders. For the reasons stated, this Court concludes that further contempt proceedings are warranted and certifies the proceeding facts.

### B. Award of Attorneys' Fees and Costs

When a party fails to comply with a court order, the court *must* order the disobedient party, to pay the reasonable expenses, including attorney's fees, caused by the failure to comply with the court's order, unless the failure was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C). Federal district courts are empowered to award attorney's fees to the government for an adverse party's improper conduct. *See, e.g.*, *United States v. City of Jackson*, 359 F.3d 727, 733 (5th Cir. 2004); *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1092–93 (3d Cir. 1988).

Here, the Court finds that an award of reasonable attorney's fees and costs is warranted. Rule 37 *requires* the Court to award the United States reasonable expenses, including attorney's fees, for Blenheim's failure to produce the Portfolio Summary Documents for in camera review.

The rule provides two narrow exceptions to this mandatory sanction: (1) if Blenheim's failure was substantially justified, or (2) other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(b)(2)(C). Blenheim has not shown that its failure was substantially justified or that an award of expenses would be unjust. As noted above, Blenheim has never claimed that compliance was impossible. Rather, Blenheim made a business decision to ignore this Court's orders. Under these circumstances, the Court finds that an award of attorney's fees and costs is just and will order a briefing schedule regarding the same.

**IT IS ORDERED:**

1. The Court hereby certifies pursuant to 28 U.S.C. § 636(e)(6)(B)(iii) that the acts discussed above constituting contempt have occurred.

2. A contempt hearing is set before the Honorable Andrew P. Gordon, U.S. District Judge, on **September 17, 2015, at 2:00 P.M**, in Courtroom 6C of the Lloyd D. George Federal Courthouse, 333 Las Vegas Blvd South, Las Vegas, Nevada 89101.

3. Defendant Blenheim Trust Company, Ltd. and its Director, John Robilliard are hereby ordered to appear and show cause why they should not be found in contempt based upon the facts this Court has certified.

4. Defendant Blenheim Trust Company, Ltd. shall pay the United States' reasonable attorneys' fees and costs related to its failure to comply with the Court's order.

    a. Counsel for the United States shall, no later than fourteen (14) days from entry of this order, serve and file a memorandum, supported by the affidavit of counsel, establishing the amount of attorneys' fees and costs incurred in bringing its motion. The memorandum shall provide a reasonable itemization and description of the work performed, identify the attorney(s) or other staff member(s) performing the work, the attorney(s) or staff member(s) customary fee for such work, and the experience, reputation and ability of the attorney performing the work. The attorney's affidavit shall authenticate the information contained in the memorandum,

provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

  b. Counsel for Blenheim shall have fourteen (14) days from service of the memorandum of costs and attorneys' fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded.

  c. Counsel for the United States shall have seven (7) days from service of the responsive memorandum in which to file a reply.

**IT IS RECOMMENDED** that Defendant Blenheim Trust Company, Ltd. and its Director, John Robilliard be HELD IN CIVIL CONTEMPT and FINED the sum of $1,000.00 per day until the Portfolio Summary Documents are submitted to the undersigned *in camera*.

Dated this 26th day of August, 2015.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE