UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:13-CV-1498 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| IVAN G. PIVAROFF, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff United States of America's motion for partial summary judgment. (ECF No. 185). *Pro se* defendants Ivan G. and Gwendolyn S. Pivaroff, along with ten other defendants, filed a response (ECF No. 221), and plaintiff filed a reply. (ECF No. 224).

Also before the court is defendants' motion for private sale. (ECF No. 222). Plaintiff filed a response (ECF No. 225). Defendants did not file a reply and the deadline to do so has passed.

Also before the court is defendants' unopposed second motion to extend time for filing opposition to plaintiff's motion for partial summary judgment. (ECF No. 214).

**I.    Background**

Plaintiff United States initiated this civil action on August 21, 2013, seeking to enforce federal tax liens and recover over $8 million in tax liabilities against defendants Ivan G. and Gwendolyn S. Pivaroff ("Pivaroffs"). (ECF Nos. 1, 120, 185 at 2).

Plaintiff filed a second amended complaint, which names the following parties: Ivan G. Pivaroff; Gwendolyn S. Pivaroff; Oahu Limited Partnership ("Oahu LP"); Molokai Limited Partnership ("Molokai LP"); Anderson Attic, Inc.; United Realty, Inc.; Blenheim Trust Company, Ltd. ("Blenheim") as Trustee of Kihei International Trust and of VIP International Trust;

**James C. Mahan**
**U.S. District Judge**

Associated Enterprises Limited ("AEL"); Lakeland, Inc.; Clark County Treasurer; Regency Towers Association, Inc.; and Las Vegas Country Club Master Association. (ECF No. 120).

Among the various entities from the second amended complaint, there was a circular flow of approximately $1,000,000 between the transferors and transferees of the funds. (ECF No. 185-11, 15, 16); (ECF No. 94-7, 8). The flow of money began from defendant Ivan Pivaroff, led to offshore trusts, and ultimately ended up back in the United States in the hands of Oahu LP. (ECF No. 185-1, 11); (ECF No. 120 at ¶¶ 8-9).

By the end of these transactions, AEL issued to Oahu LP a $1,000,000 promissory note and mortgage deed with a 6.75% interest rate. (ECF No. 185-15). The mortgage deed was for a penthouse located at 3111 Bel Air Drive, #28F, Las Vegas, Nevada, which was the Pivaroffs' home from 1991 until September 2015. (ECF No. 185-4, 5); (ECF No. 174). On April 1, 2014, the Pivaroffs reported the penthouse as their property on their personal bankruptcy schedules. (ECF No. 185-21).

The funds that AEL loaned to Oahu LP ultimately came from three sources: Kauai Limited Partnership ("Kauai LP"), Molokai LP, and defendant Ivan Pivaroff. (ECF No. 185-11, 15, 16); (ECF No. 94-7, 8). The Pivaroffs own and operate both Kauai LP and Molokai LP as well as Oahu LP. (ECF No. 18-20); (ECF No. 19-1) (ECF Nos. 18-18, 19). Defendant Ivan Pivaroff used these entities to circulate funds because he claimed that "you can't loan money to yourself." (ECF No. 185-1 at 66).

Plaintiff asserts that the mortgage deed is not a valid lien but instead a sham instrument that the Pivaroffs executed to protect their property from federal tax liens and to defraud the federal government. (ECF No. 120 at ¶ 159). Plaintiff also asserts that the promissory note and mortgage deed was a sham transaction intended to help the Pivaroffs repatriate $1,000,000 back into the United States for their own personal use. (*Id*. ¶ 160).

The Internal Revenue Service ("IRS"), in pursuit of defendants' unpaid taxes, engaged in various actions in order to place a federal tax lien on defendants' properties. Among those actions is a tax court decision that determined defendants' tax liabilities on September 15, 1998. (ECF No. 120 at ¶ 27); *Pivakoff v. Comm'r of I.R.S.*, No. 00145-86, doc. 11 (T.C. Sep. 15, 1998). Following

**James C. Mahan**
**U.S. District Judge**

- 2 -

the tax court decision, on November 6, 1998, the IRS assessed and mailed out a notice of defendants tax deficiencies. (ECF No. 185-2 at ¶¶ 4, 5). Less than ten years later, on October 17, 2008, plaintiff commenced a suit against the Pivaroffs. *United States v. Pivaroff*, Case No. 2:08-cv-1405, doc. 1, 13 (D. Nev. Sep. 18, 2009). The IRS had originally recorded a notice of the federal tax lien on Novermber 2, 2005, but failed to re-record the lien in a timely manner causing the lien to lapse. (ECF No. 185-3). The IRS later revoked the release and recorded two new notices of federal tax lien. (ECF No. 185-4).

Plaintiff filed the instant motion for partial summary judgment on count two of the second amended complaint, which requests the court to hold that plaintiff has a valid federal tax lien on the penthouse, that the mortgage against the penthouse is invalid, and to allow a judicial sale of the property. (ECF No. 185). On March 17, 2016, defendants filed a motion for private sale, which requests that the court order a private sale of the penthouse instead of a judicial sale. (ECF No. 221); (ECF No. 222).

**II.     Legal Standard**

*a. Summary Judgment*

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

James C. Mahan
U.S. District Judge

- 3 -

1       In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

      If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

      In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

      At summary judgment, a court's function is not to weight the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

     *b.   Local Rule 7-2*

"The failure of the opposing party to file points and authorities in response to any motion shall constitute a consent to granting the same." D. Nev. 7-2(d). This failure-to-oppose rule does not apply solely to failure to file a physical document, but also to failure to assert in an opposition arguments that oppose those presented in the motion. *See, e.g., Duensing v. Gilbert*, 2013 WL 1316890 (D. Nev. Mar. 1, 2013) (failing to respond to defendant's arguments on the issue constituting consent to the granting of the motion); *Schmitt v. Furlong*, 2013 WL 432632 (D. Nev. Feb. 4, 2013) (failure to argue against substantive due process violations indicated consent to granting summary judgment); *Gudenavichene v. Mortgage Elec. Registration Sys.*, No. 2:11–cv–01747–GMN–VCF, 2012 WL 1142868 (D. Nev. Apr. 4, 2012) (plaintiff's failure to respond to any of the arguments raised in the motion to dismiss constituted consent to granting the motion).

**III.   Discussion**

Plaintiff argues that partial summary judgment on count two of the second amended complaint, which requests permission for a judicial sale of the penthouse, is appropriate because plaintiff has a valid federal tax lien on the penthouse and the mortgage against the penthouse is invalid. (ECF No. 185). Defendants do not dispute that plaintiff has a valid federal tax lien or that the AEL mortgage is invalid; instead, defendants' response appears to be a motion for private sale with the title "Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Motion for Private Sale." *See* (ECF Nos. 221, 222).

     *a.   Federal Tax Lien*

Plaintiff argues that it has a valid federal tax lien on the penthouse because plaintiff commenced suit to collect tax liabilities from the Pivaroffs within the 10-year filing period set by 26 U.S.C. § 6502 and properly revoked the lien lapse on June 17, 2013. (ECF No. 185 at 13–15). Furthermore, the Pivaroffs reported in 2014 that they own the penthouse, allowing the property to fall within the scope of the lien. (ECF No. 185-21). Defendants did not respond to plaintiff's argument that the federal tax lien is valid and therefore do not dispute plaintiff's claim pursuant to Local Rule 7-2(d). *See, e.g., Duensing*, 2013 WL 1316890.

The court also has substantive reasons to find that the federal tax lien is valid. A federal tax lien arises when a taxpayer "neglects or refuses" to pay taxes after the IRS has demanded payment. I.R.C. § 6321; *Glass City Bank v. United States*, 326 U.S. 265, 267 (1945). The scope of a tax lien includes "any property . . . right, title, or interest" belonging to the tax delinquent. I.R.C. § 7403(a); *Glass City Bank*, 326 U.S. at 267 (quotes omitted). The tax lien arises on the date of the assessment and continues until the taxpayer satisfies the lien or until 10 years lapse, making the lien unenforceable. I.R.C. § 6322; I.R.C. § 6502. However, if the plaintiff files suit before the 10-year time period expires, then the lien remains valid until the taxpayer satisfies the lien. I.R.C. § 6502.

When a federal tax lien is not timely recorded, the lien may self-release. I.R.C. § 6325(f)(1)(A); Guidelines for Processing Notice of Federal Tax Lien Documents 4 (Department of Treasury I.R.S. 2014). The IRS may revoke an erroneous release by mailing and recording a revocation notice, making the lien valid from the date of the revocation of the release. I.R.C. § 6325(f)(2).

The IRS assessed and mailed out notice of defendants' tax liabilities on November 6, 1998. (ECF No. 185-2 at ¶¶ 4, 5). Less than ten years later, on October 17, 2008, plaintiff commenced a suit against the Pivaroffs. *United States v. Pivaroff*, Case No. 2:08-cv-1405, ECF No. 1, 13 (D. Nev. Sep. 18, 2009). The IRS had originally recorded a notice of the federal tax lien on November 2, 2005, but failed to re-record the lien in a timely manner causing the lien to release. (ECF No. 185-3). The IRS later revoked the release and recorded two new notices of federal tax lien. (ECF No. 185-4). In light of these facts, the IRS has properly adhered to the procedures as listed in the Internal Revenue Code.

On April 1, 2014, the Pivaroffs reported the penthouse as their property on their personal bankruptcy schedules. (ECF No. 185-21). Since tax liens include "any property . . . right, title, or interest" belonging to the tax delinquent, the lien extends to the penthouse. I.R.C. § 7403(a). Accordingly, the federal tax lien is valid and enforceable against the Pivaroffs' property at 3111 Bel Air Drive #28F, Las Vegas, Nevada.

. . .

**James C. Mahan**
**U.S. District Judge**

- 6 -

   *b. Associated Enterprises Limited Mortgage*

   Plaintiff argues that the AEL mortgage on the penthouse is invalid because the Pivaroffs loaned themselves the funds in order to defeat the tax liens. (ECF No. 185 at 16–25). Alternatively, plaintiff argues that the federal tax lien is enforceable even if AEL has a valid mortgage on the penthouse. (*Id.* at 25–26). Defendants did not respond to plaintiff's argument and therefore consent to the court's finding that AEL's mortgage is invalid pursuant to Local Rule 7-2(d). *See, e.g., Duensing*, 2013 WL 1316890.

   The court also has substantive reasons to find that the mortgage is invalid. A mortgage is a valid transaction when "there is a genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax independent considerations, and is not shaped solely by tax-avoidance features." *Frank Lyon Co. v. United States*, 435 U.S. 561, 583–84 (1978). When there is a valid transaction, the government honors the resulting rights and duties when determining tax liabilities. *Id.* at 584. Alternatively, entities and transactions are a sham when they lack "economic substance," and are, therefore, "not recognized for federal tax law purposes." *Sparkman v. Comm'r Internal Revenue*, 509 F.3d 1149, 1156 n.6 (9th Cir. 2007); *see Beck v. Comm'r Internal Revenue*, 678 F.2d 818, 821 (9th Cir. 1982) (applying the sham transaction standard to loans for real property). Loans that operate to circulate funds and lack any genuine indebtedness qualify as sham transactions. *See Bail Bonds by Marvin Nelseo, Inc., v. Comm'r Internal Revenue*, 820 F.2d 1543, 1549 (9th Cir. 1987).

   AEL loaned $1,000,000 to Oahu LP for the penthouse. (ECF No. 185-15). The funds that AEL loaned out ultimately came from three sources: Kauai LP, Molokai LP, and defendant Ivan Pivaroff. (ECF No. 185-11, 15, 16); (ECF No. 94-7, 8). None of these entities have genuine indebtedness because two parties own and operate each of the relevant entities that are giving and receiving funds: the Pivaroffs. Furthermore, defendant Ivan Pivaroff's deposition confirms that the mortgage was a sham transaction when he explained that he used the various entities because "you can't loan money to yourself." (ECF No. 185-1 at 66). Therefore, the mortgage for the penthouse is an invalid transaction that cannot shield the Pivaroffs from the federal tax lien.

. . .

    *c. Judicial Sale*

Plaintiff argues that in light of the valid federal tax lien, the court should allow a judicial sale of the property. (ECF No. 185). Defendants argue that the court should instead order a private sale of the penthouse. (ECF Nos. 221, 222).

Courts may order the private sale of real property by the government pursuant to a tax lien if the court finds that doing so would conserve the best interests of the estate. 28 U.S.C. § 2001(b). In ordering a private sale, Section 2001(b) requires the court to "appoint three disinterested persons to appraise such property" and to not confirm a private sale "at a price less than two-thirds of the appraised value." *Id.* However, 28 U.S.C. § 2004 gives district courts the discretion to deviate from the standard set in Section 2001(b), allowing courts to foreclose on personal property without three disinterested appraisals. 28 U.S.C. § 2004; *United States v. Stonehill*, 83 F.3d 1156, 1160 (9th Cir. 1996).

Alternatively, plaintiff has the ability to foreclose a federal tax lien pursuant to I.R.C. § 7403(c) by requesting the court to permit a judicial sale. I.R.C. § 7403; *see United States v. Rodgers*, 461 U.S. 677, 691–92 (1983); *In re Pletz*, 221 F.3d 1114, 1118 (9th Cir. 2000). Section 7403 is one part of the government's "formidable arsenal of collection tools to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting." *United States v. Rogers*, 461 U.S. 677, 683 (1983). This "collection tool" gives courts the power to order the sale of a home itself rather than just the interests of the delinquent taxpayer, but only after all parties have notification of the action and have adjudicated the merits of their claims to the property. *Id.* at 693–94. I.R.C. § 7403(c).

Section 7403(c) does not require courts to order a judicial sale, but discretion is typically limited to cases where a non-delinquent third party is involved. *Id.* at 679. There are four factors that a court may consider in its discretion: (1) the extent to which the government's interests would be prejudiced if it were relegated to a forced sale, (2) whether a third party with a nonliable separate interest in the property has a legally recognized expectation that his or her property will not be subject to a forced sale, (3) the likely prejudice to a third party, both in personal dislocation costs

**James C. Mahan**
**U.S. District Judge**

- 8 -

and practical under-compensation, and (4) the relative character and value of the interest held in the property. *Id.*

Defendants' motion for private sale does not satisfy the standard set in 28 U.S.C. § 2001(b) because it provides one appraisal of the penthouse rather than three. *See* (ECF No. 222-1). In addition, a court appointed appraiser did not prepare the appraisal that defendants have attached to their motion. The appraiser also does not qualify as a "disinterested" party because she is the daughter of defendant Gwen Pivaroff and stepdaughter of defendant Ivan Pivaroff. *See* (ECF Nos. 222-1, 225 at 4). The court finds no reason to deviate from the standard set in Section 2001(b), particularly since defendants have not presented any facts or arguments to assure the court that their appraisal is a fair and reliable basis for private sale.

As for the judicial sale, plaintiff has complied with Section 7403 by naming all relevant parties in its second amended complaint. *See* (ECF No. 120); *see Lake Las Vegas Master Trust v. I.R.S.*, 2:14-cv-00435-GMN-NJK, 2016 WL 1248699 at *7. The court has given defendants ample opportunity to adjudicate the merits of their claims to the property, and defendants have not raised any potentially superseding property interests or even disputed the validity of the federal tax lien. Furthermore, there is not a non-delinquent third party that has a property interest in the penthouse, giving the court no reason to block judicial sale of the property. Accordingly, the court finds that foreclosure of the federal tax lien on the penthouse located at 3111 Bel Air Drive, #28F, Las Vegas, Nevada, is appropriate and gives plaintiff permission to submit a motion for judicial sale.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff United States of America's motion for partial summary judgment (ECF No. 185), be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' Ivan Pivaroff, et al., motion for private sale (ECF No. 222), be, and the same hereby is, DENIED.

James C. Mahan
U.S. District Judge

- 9 -

1   IT IS FURTHER ORDERED that defendants' Ivan Pivaroff, et al., second motion to
2   extend time for filing opposition to plaintiff's motion for partial summary judgment (ECF No.
3   214), be, and the same hereby is, DENIED as moot.

4   DATED July 18, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**